EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

COMMONWEALTH OF
MASSACHUSETTS, et
al., Defendants.

Civ. A. No. 86–0061–MA.

United States District Court,
D. Massachusetts.

June 1, 1987.

Christopher P. Lee, Moonyene S. Jackson, E.E.O.C., New York City, for plaintiff.

Despena F. Billings, Asst. Atty. Gen., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The Equal Employment Opportunity Commission ("EEOC") has brought this lawsuit seeking declaratory and injunctive relief against the Commonwealth of Massachusetts, the state Department of Personnel Administration, and the state Registry of Motor Vehicles. The EEOC claims that the state defendants are violating the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, by restricting appointments to the position of Motor Vehicle Examiner to those who are 35 years old or younger. In their answer, the defendants set forth a number of affirmative defenses.

The case is now before me on the defendants' motion for partial summary judgment. They ask me to rule that recent amendments to the ADEA exempt the position of Examiner from the protection of the Act's provisions, so that the EEOC is not entitled to the prospective relief it seeks. The EEOC opposes the motion. For the reasons stated below, I reserve decision on the motion pending the submission of further affidavits.

### 1. *Statutory Framework*

The defendants will not hire any person over the age of 35 for appointment to Motor Vehicle Examiner, a position within the Massachusetts Registry of Motor Vehicles. They base their authority to so limit these appointments on M.G.L. c. 90, § 29, as amended by St.1985, c. 768, which states that "[a]n applicant who has passed his thirty-fifth birthday shall not be appointed as an examiner" unless the examination was taken before he reached age 35.

■ The EEOC claims that this state statute violates the ADEA's prohibition against discrimination in hiring on the basis of age. The defendants counter that the 1986 amendments to the ADEA exempt law enforcement officers for whom a state has established maximum hiring ages from the Act's protection for the next seven years, and that the position of Examiner falls within the definition of law enforcement officer.

The relevant portion of the amended statute provides:

It shall not be unlawful for an employer which is a State ... [or] an agency or instrumentality of a State ... to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(i) (1986).

The statute further provides:

The term "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of a State, including an employee engaged in this activity who is transferred to a supervisory or administrative position. For the purposes of this subsection, "detention" includes the duties of employees assigned to guard individuals incarcerated in any penal institution.

29 U.S.C. § 630(k) (1986).

The ADEA thus permits a state to set a maximum hiring age for law enforcement officers whose primary duties are the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses.

### 2. *Discussion*

The defendants attempt to show that the Examiners are law enforcement officers by virtue of their statutory powers and actual duties. They point to M.G.L. c. 90, § 29, which states that "examiners ... shall have and exercise throughout the commonwealth all the powers of police officers and constables under any provision of law, except the power of serving and executing civil process, and may carry within the commonwealth such weapons as the registrar may determine...." The state legislature has also provided that "any employee of the registry of motor vehicles who will exercise police powers shall prior to exercising any police powers, be assigned to and satisfactorily complete a prescribed course of study at a regional or municipal police training school, approved by the Massachusetts criminal justice training counsel...." M.G.L. c. 41, § 96B, as amended by St.1985, c. 231, §§ 20, 20A.

The defendants have submitted the affidavit of John A. Nason, Jr., the Deputy Registrar of Motor Vehicles for Law Enforcement, which describes the actual duties of those in the Registry police force. He states that the entry level position is known as Motor Vehicle Examiner, and that the higher ranks are successively entitled Investigator, Assistant Supervisor of Special Services, Supervising Inspector with Power to Hold Hearings, and Supervisor of Special Services. Examiners are selected after taking a civil service examination and undergoing a 14 week police officer training course and a one week course

on motor vehicle examination procedure. After completion of these courses and acceptance by the Registry, a new Examiner may bid for assignment to any of the 35 Registry branch offices statewide, or for assignment to one of several special law enforcement units. Each Examiner is issued a firearm which he must carry at all times, and he must undergo annual testing and recertification in its use. To this point, at least, the EEOC does not dispute these facts.

However, the Nason affidavit further states that "[t]he primary duties of Examiners focus on upholding the motor vehicle laws of the Commonwealth, and include such related functions as making arrests, prosecuting violators of the motor vehicle laws, testifying in court, investigating accidents and complaints, and performing other law enforcement functions as needed." Examiners also pick up suspended licenses and registrations, inspect records of dealers and garages, inspect school buses, examine applicants for learners' permits and drivers' licenses, and investigate the habits and reputations of persons seeking license reinstatements. Examiners are often "loaned" to various District Attorneys' offices when needed "to investigate criminal matters and perform related duties." The affidavit also describes the following: a Massachusetts Civil Service Commission ruling which holds that an Examiner position is substantially the same as that of a municipal police officer for purposes of transfers; a consent decree signed by another judge of this Court allowing civil service lists for Examiners to be used to make minority appointments to entry level police officer positions for affirmative action purposes; collective bargaining agreements between the Commonwealth and the Coalition of Public Safety which establish for Examiners certain benefits customarily reserved for law enforcement positions; and certain Medical Guidelines for Public Safety Positions which apply to Examiners.

The EEOC disagrees with Nason's conclusory statements and attempts to show that disputed material facts exist through the affidavit of Christopher P. Lee, a senior trial attorney at the Commission. His affidavit is based in large part on information supplied by Anthony Trocki, the Assistant to the Registrar of Motor Vehicles. Lee also attaches the Civil Service Examination Announcements for the position of Examiner, dated 1971, 1979, 1981, 1983, and 1985, which, he claims, do not mention any police oriented work in the stated duties.

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This is a "rigorous standard," and it requires that the court view the record in the light most favorable to the nonmoving party and indulge that party all inferences. *Voutour v. Vitale,* 761 F.2d 812, 817 (1st Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed. 2d 916 (1986). As the moving parties for partial summary judgment, the defendants have the initial burden of proving that no genuine issue of material fact exists. *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930 (1st Cir. 1983). If the movants allege particular undisputed facts that entitle them to summary judgment as a matter of law, then the burden shifts to the opposing party to show that summary judgment is inappropriate. *Id.* at 929. With these standards in mind, I now consider whether summary judgment is appropriate.

■ On the record before me, the defendants have not met their initial burden of showing that no genuine issue of material fact exists as to the law enforcement aspects of the Examiners' duties. While the Massachusetts legislature has granted the Examiners police powers, the defendants must show that the Examiners' primary duties are those set forth in the ADEA exemption provision. The Nason affidavit, which describes the duties of Examiners, does not establish that the position falls within the statute's definition of a law enforcement officer—one whose duties are *primarily* the investigation, apprehen-

sion, or detention of individuals suspected or convicted of criminal offenses.

Nason states that a new Examiner may bid for assignment to any of the 35 Registry branch offices or to one of several law enforcement units, including the Auto Theft Unit, the Drunk Driving Roadblock Teams, the Governor's Auto Theft Strike Force, the Investigative Service Unit, or the Warrants Apprehension Unit. I am not informed, however, of how many Examiners are assigned to the 35 branch offices and how many are assigned to the special units. Nor am I told whether the duties of those working in the branch offices differ significantly from the duties of those working with the special units. Without distinguishing among the Examiners working in these different settings, Nason merely asserts that the "primary duties of Examiners" include making arrests, prosecuting violators of the motor vehicle laws, testifying in court, and investigating accidents and complaints. While one or more of these enumerated duties, such as "making arrests," clearly fall within the ADEA's definition of duties performed by a law enforcement officer, the affidavit fails to set forth facts from which I could conclude that such activities are *primary* duties of an Examiner.[1] Before I can draw that conclusion, I need more information about the Examiners' activities. How many Examiners actually make arrests in the usual course of their duties? How often are those Examiners confronted with situations where it is likely they will have to make arrests? How many Examiners assist in prosecuting violators of the motor vehicle laws? Is this an activity they perform often or only occasionally? What specific activities do they undertake when assisting in such prosecutions? Do those activities include duties which might be construed as "the investigation, apprehension, or detention of individuals" suspected or convicted of criminal offenses? How many Examiners investigate accidents and complaints? What amount of their time is spent on such investigations? How many of these investigations deal with criminal matters?

I have similar difficulties in determining whether the Examiners' primary duties are related to law enforcement from the affidavit's bare statements that all Examiners "are subject to be called at any time to perform police duties," they are "often 'loaned' to various District Attorneys' offices when needed to investigate criminal matters and perform related duties," and they "patrol the roads in marked police cruisers." To make such a determination, I should be apprised of facts such as the following: how often Examiners are called to perform police duties, what tasks an Examiner undertakes when so called, how often and how many Examiners are "loaned" to the District Attorneys' offices, what amount of time is spent on criminal investigations, what the specific "related duties" undertaken at the District Attorneys' offices entail, how many Examiners patrol the roads, what amount of their time is spent patrolling, and what their duties are while on patrol.

Nor do the defendants make their showing for summary judgment purposes through the rest of the information contained in the affidavit. The affidavit in essence admits that other duties performed by the Examiners (picking up suspended licenses and registrations, inspecting school buses, examining applicants for learners' permits and licenses, and investigating those seeking license reinstatements) are not law enforcement duties. The other facts upon which the defendants rely (the existence of the consent decree, the collective bargaining agreements, and the Medical Guidelines, as described above) simply are not relevant as to whether an Examiner's primary duties include the investigation, apprehension, and detention of those suspected or convicted of criminal activities.

The defendants attempt to demonstrate that the public and press regard the Examiners as law enforcement officers by submitting a number of newspaper articles regarding the Examiners. While those ar-

---

1. I give no weight to Nason's statement that the stated activities are primary duties of Examin-

ers, as he has presented me with no facts from which I could draw that conclusion.

ticles describe various arrests made and citations issued by the Registry police force, they do not state whether those involved hold the position of Examiner, which is the only position involved in this litigation.

The administrative determination by the Civil Service Commission that an Examiner position is essentially the same as that of a municipal police officer for purposes of transfer is also of little probative value. My query is whether the duties of an Examiner encompass those traditionally performed by a municipal police officer; the Commission did not make such a determination in deciding that the positions are similar for transfer purposes. The Commission found the two positions are "substantially the same as referred to in Chapter 31, Section 35 as both examinations test for substantially the same information." The statute dealing with transfers mentioned by the Commission, M.G.L. c. 31, § 35, as amended by St.1986, c. 557, § 42, states that a "position shall not be considered similar if it has a title higher than that of the position from which the transfer is to be made or if the requirements for appointment to such positions are substantially different." The Commission decision thus merely concludes that the "positions in question have basically the same qualifications and requirements," without describing and examining the duties of either position in any manner.

In summary, I am unable to conclude on this record that the primary duties of an Examiner are those described in the ADEA. While the defendants have presented me with a number of facts from which I could speculate that an Examiner's duties fall within those described in the ADEA, I have not yet been shown that the usual and primary duties of those holding the title of Examiner encompass the enumerated law enforcement activities.

Accordingly, I reserve my decision on the defendants' motion for partial summary judgment pending submission of further affidavits or other papers from the defendants containing the information described above. The EEOC is allowed twenty (20) days to respond to these additional papers by submitting its own memoranda or affidavits.[2]

SO ORDERED.

---

**2.** I acknowledge the recent receipt from the defendants of an EEOC status report filed in unrelated consolidated cases. The EEOC's decision to dismiss those cases has no bearing on the present case, however, as it has not yet been determined whether the position of Examiner falls within the ADEA exemption for law enforcement officers.